IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Pamela Sue Lunsford,          :

    Plaintiff,             :

  v.                           :     Case No.  2:11-cv-308

Michael J. Astrue,            :     JUDGE MICHAEL H. WATSON
Commissioner of Social Security,     Magistrate Judge Kemp

    Defendant.             :

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Pamela Sue Lunsford, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income.  That application was filed in December, 2006, and alleged that plaintiff became disabled on June 21, 2003, although plaintiff later amended her onset date to December 28, 2006, and also withdrew an application for disability insurance benefits which she had filed.

After initial administrative denials of her claim, plaintiff was given a hearing before an Administrative Law Judge on December 16, 2009.  In a decision dated February 24, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on February 17, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on July 11, 2011.  Plaintiff filed her statement of specific errors on September 9, 2011.  The Commissioner filed a response on December 12, 2011.  No reply brief was filed, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found

at pages 31 through 53 of the record. Plaintiff, who was 48 years old at the time of the hearing and is a high school graduate with some college, testified as follows.

Plaintiff last worked in 2003 at a job which was classified as part-time, although she usually worked between 37 and 39 hours per week. She was a check-out person at a department store. Before that, she worked at a candle factory. She had also done some data entry at an AT&T warehouse.

Plaintiff testified that she had a bicycle accident in which she injured her head. She also injured her back in a trampoline accident and had a foot injury which continues to affect her. Additionally, she has throbbing in her hip.

From an emotional standpoint, plaintiff stated that she has "shakiness" and social anxiety. She finds it difficult to sleep due to both physical pain and depression. She can do light household chores and walk to stores close to her home. She thought that she could not work due to mood swings. She had difficulty walking, standing, and lifting and carrying heavy objects, but on a good day could stand for half an hour, and could sit for an hour at a time. She had few hobbies other than playing games on a computer, and did not socialize much.

### III. The Medical Records

The medical records in this case are found beginning on page 197 of the administrative record. Because plaintiff raises issues related only to her psychological impairments, the Court will focus its summary of the medical records on that evidence.

On October 9, 2006, plaintiff underwent a mental health assessment. The diagnoses at that time included major depressive disorder as well as migraines and poor vision. Her GAF was rated at 52, and individual counseling was recommended. (Tr. 214-24).

Dr. Weaver examined plaintiff on February 12, 2007 at the request of the Social Security Administration. The results of

the physical examination are not particularly relevant here, although plaintiff told Dr. Weaver that she had been having headaches since her bicycle accident two-and-one-half years before. She said she never had been diagnosed or treated for depression and anxiety, but reported frequent mood swings and being stressed when around crowds of people or in public places. She exhibited a blunted affect and an anxious irritated mood during the examination and did not make eye contact frequently. Dr. Weaver thought she would be limited to working in environments without extensive social interaction or interpersonal communication. (Tr. 228-32).

Dr. Roach performed a consultative psychological examination on February 28, 2007. Plaintiff reported anxiety and depression. She was working at that time as a requirement to obtain food stamps. She appeared nervous but could carry on a conversation adequately. Her memory was adequate and she was functioning within the average range of intelligence. She did, however, meet the criteria for a borderline personality. The diagnostic impressions included major depressive disorder, moderate to severe, and borderline personality disorder. Her GAF was rated at 60. She understood and responded appropriately to the examiner's questions and maintained satisfactory attention, but her work pace was slow and she could deal with the public only in a limited manner. Dr. Roach thought she was moderately impaired in those three areas, but markedly impaired in her ability to withstand work-related stress. (Tr. 239-44).

A state agency reviewer, Dr. Terry, reviewed the records and offered the following opinions about plaintiff's psychological impairments. Dr. Terry thought plaintiff had an affective disorder, an anxiety disorder, and a personality disorder. She viewed plaintiff's limitation in the area of activities of daily living as mild, perceived moderate limitations in the areas of

maintaining social functioning and maintaining concentration, persistence, and pace, and saw no evidence of decompensation in a work setting. The only marked limitation she noted was in dealing with the general public; unlike Dr. Roach, Dr. Terry thought plaintiff had only a moderate limitation of her ability to complete a normal work day and work week without interruption from psychologically-based symptoms. (Tr. 247-66). Dr. Demuth, another state agency reviewer, concurred with this analysis. (Tr. 323).

In July of 2007, Dr. Wilcox did a psychological assessment for Muskingum County Job and Family Services. At that time, plaintiff's mood was appropriate and she did not exhibit any social discomfort. Her eye contact was also appropriate. She had some general nervousness but no signs of anxiety. Testing indicated both depression and anxiety. Dr. Wilcox's impression was a dysthymic disorder, early onset, chronic type; an adjustment disorder with mixed anxiety and depressed mood; and cannabis abuse in possible early full remission. He rated her GAF at 60-65 and concluded that her only marked impairment was in the area of setting realistic goals or making independent plans, and that was not true all of time. He thought her ability to withstand work stress varied from mildly to moderately impaired. (Tr. 442-47).

Plaintiff underwent another psychological evaluation on March 11, 2009. This evaluation was done by Dr. Yee. Plaintiff reported depression and problems with attention. Her depression began in early childhood. Her mood was depressed with a mildly reactive and anxious affect, but she told Dr. Yee that her mood improved with medication. She showed some signs of anxiety and reported some post-traumatic flashbacks from her childhood. Dr. Yee diagnosed PTSD and rated plaintiff's GAF at 63. Referral to a psychiatrist was recommended. Dr. Yee concluded that if

-4-

plaintiff's mood were stable, she would be a good candidate for vocational retraining. Dr. Yee also found her to be markedly limited in her ability to withstand ordinary work stress, but only moderately limited (or less than moderately limited) in other work-related functions. (Tr. 328-36).

IV. The Vocational Testimony

Ms. Kaufman, a vocational expert, also testified at the administrative hearing. Her testimony begins at page 53. She testified that plaintiff's past relevant work as a sales clerk was performed at the light exertional level, and that the candle worker position was a medium strength job. The data entry job was performed at the sedentary exertional level. Two of these three jobs were semi-skilled.

Ms. Kaufman was asked to assume that plaintiff could work at the medium exertional level and that she had the ability to perform mildly complex tasks in a low-stress, routine, predictable and static work setting that did not require frequent changes. The assumptions about plaintiff's ability also included, optimally, working in a solitary position, but she could work in a non-public setting that involved no more than infrequent and superficial contact with coworkers and supervisors. With these restrictions, Ms. Kaufman testified that plaintiff could not return to any of her past jobs due to their pace or the amount of public interaction they required. However, a person with those restrictions could perform a number of unskilled jobs, such as cleaner, laundry worker, and packer. Ms. Kaufman provided numbers for these jobs in the regional economy. If plaintiff were limited as she testified, however, she could not be employed, and the same would be true if she were off-task or unable to function for at least a third of the work day or work week.

V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11 through 21 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff had not engaged in substantial gainful activity from her amended onset date of December 28, 2006 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including head trauma, depression, and social anxiety disorder. The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a reduced range of medium work as long as that work involved no more than mildly complex routine tasks that were low stress and which could be performed in a static work setting that was solitary in nature with no productions quotas or fast paced work, and as long as the work did not involve contact with the public or more than infrequent or superficial contact with co-workers or supervisors. These restrictions precluded plaintiff from performing any of her past relevant work. However, the ALJ accepted the vocational expert's testimony that someone with such limitations could perform a variety of jobs in the regional economy, such as cleaner, laundry worker, and packer. As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff raises the following issue. She argues that the ALJ erred in the way in which he evaluated the mental health examination reports. Included in this statement of error is a claim that the ALJ did

not state sufficient reasons to reject the examination reports, and that adopting the state agency reviewer's opinion as to her residual functional capacity, while rejecting that of the consultative examiners, was reversible error.  The Court generally reviews the administrative decision under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In support of her first assignment of error, plaintiff notes that the reasons given by the ALJ for discounting the opinions of

-7-

the examining sources which, if accepted, would preclude all work activity, were that those opinions were based on only a one-time examination, were not supported by objective medical evidence, were internally inconsistent, and appear to have been based on plaintiff's own self-report of symptoms.  She asserts that these reasons, examined in more detail, do not support the rejection of those opinions because mental health evaluations are necessarily supported by a subjective report of symptoms; because a consultative report is necessarily based on a one-time examination; and that there is no objective evidence in the record which contradicts the examiners' findings.  If these rationales are insufficient, plaintiff argues that the ALJ was required to accept the views of the examiners and to have found plaintiff to be disabled.

Plaintiff's description of the reasons why the ALJ chose not to credit fully the opinions of those examiners who found the most significant restrictions in her ability to do work-related activities - particularly Drs. Roach and Yee - does not reflect the entirely of the ALJ's reasoning process on that subject, however.  Rather, the ALJ reviewed the treatment notes concerning plaintiff's psychological impairments and observed that those notes showed a good response to treatment and that her GAF was consistently rated at 60 or above, which the ALJ interpreted to be an indicator that "if symptoms are present, they are transient and expectable reactions to psychosocial stressors, imposing no more than moderate impairments in social functioning and ability to maintain concentration, persistence and pace." (Tr. 17).  The ALJ also found that plaintiff was described "as being able to relate adequately, follow instructions, persist at tasks and avoid getting distracted."  Id.  Additionally, the ALJ relied on testimony and evidence that plaintiff was able, if motivated, to do a wide range of household tasks and that she was able to care

for herself.  Finally, the ALJ concluded that her testimony about disabling symptoms was not entirely credible, noting that at one point she had reported that she could probably work but simply had not been able to find a job and that she stopped working because her boyfriend at the time was supporting her.  It was only after the ALJ made these findings that he articulated, as part of the reason for rejecting the views of Drs. Roach and Yee, that they were based on plaintiff's subjective complaints, which the ALJ had found to be not entirely credible.  Even though much of the process of arriving at a diagnosis and evaluation of psychological conditions is based on subjective reports of symptoms, if an ALJ finds those subjective reports to be unworthy of complete belief, any medical opinion based on such complaints may also be discounted.  See, e.g., Allen v. Comm'r of Social Security, 561 F.3d 646, 652 (6th Cir. 2009).

As the Commissioner points out, the ALJ was also entitled to give the lack of a treating relationship between plaintiff and Drs. Roach and Yee some weight.  While that might not be a sufficient reason, standing alone, for discounting a consultative examiner's report, at the same time, the absence of a treating relationship is a factor which, under 20 C.F.R. §404.1527(c), may be taken into account in evaluating opinion evidence.  The Court of Appeals has also held that the presumption that, absent reasons to the contrary, a treating source's opinion is accorded controlling weight, is inapplicable to the opinions of non-treating sources.  See Coldiron v. Comm'r of Social Security, 391 Fed. Appx. 435, *6 (6th Cir. Aug. 12, 2010), citing Atterberry v. Sec'y of Health & Human Servs., 871 F.2d 567, 572 (6th Cir. 1989).  Thus, the ALJ did not err in taking this factor into account even though it is the nature of a consultative examination to be a "one-time" event.

The ALJ's opinion also points out valid inconsistencies in

the opinions of these examiners. They did not report any findings, supported by testing or even strongly supported by their observations during the clinical interview, which correlated with their conclusion that plaintiff would be unable to withstand ordinary work stress. In this regard, it is also useful to note that Dr. Wilcox, whose opinion plaintiff appears to wish to characterize in the same way as she does the views of Drs. Roach and Yee, did not share their view on this issue, and as the Commissioner points out, he felt plaintiff was employable despite her symptoms. (Tr. 447).

Plaintiff's second argument, which follows logically from her first, is that if the Commissioner erred in the way in which the opinions of Drs. Roach and Yee were evaluated, it was not proper to credit the conclusions reached by the state agency reviewer, Dr. Terry, over their contrary views. She also argues that Dr. Terry's opinion is contrary to, and not supported by, the evidence she reviewed, that her conclusions are not buttressed by sound methodology, and that they are rendered somewhat less reliable because they did not take into account Dr. Yee's later report. The Court finds this argument similarly unavailing.

First, as noted, the Court has found that the ALJ advanced valid reasons for not viewing plaintiff's psychological condition quite as pessimistically as did Drs. Roach and Yee. At the same time, the ALJ found that plaintiff had severe psychological impairments, and he imposed significant restrictions on her ability to perform work-related functions arising from those impairments. Thus, even absent Dr. Terry's report, there would have been a good correlation between a modest discounting of the views of Drs. Roach and Yee (and acceptance of the views of Dr. Wilcox) and the residual functional capacity determination made by the ALJ.

Second, although plaintiff argues that Dr. Terry's opinion is not supported by the evidence of record, she does not identify with any precision which evidence contradicts what Dr. Terry had to say. Presumably, because Dr. Terry disagreed with Dr. Roach as to plaintiff's ability to withstand the stress and pressure of work activity, plaintiff is contending that Dr. Roach's opinion is the evidence which contradicts Dr. Terry's opinion. But both opinions are just that - opinions - and both are based on the same set of underlying findings and observations, because Dr. Roach's report was reviewed by Dr. Terry and she commented on the accuracy of some of his conclusions. Especially given the Court's finding that the ALJ did not have to credit in full the views expressed by Dr. Roach, it is difficult to conclude that his assessment of plaintiff's ability to deal with work stress is the type of contradictory evidence that would make the ALJ's reliance on Dr. Terry's opinions unreasonable. See, e.g., Helm v. Comm'r of Social Security, 405 Fed. Appx. 997, 1002 (6th Cir. Jan. 4, 2011), citing SSR 96-6p and 20 C.F.R. §404.1527(d), and noting that an ALJ need "only to provide 'good reasons' for giving greater weight to the opinions of agency sources." The ALJ did so here, and the Court finds no error which would warrant either reversal or remand.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which

objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge