UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Pamela Sue Lunsford,

    Plaintiff,

v.

    Case No. 2:11–cv–308

Commissioner of Social Security,

    JUDGE MICHAEL H. WATSON
    Magistrate Judge Kemp

    Defendant.

**OPINION AND ORDER**

    On April 16, 2012, the Magistrate Judge issued a Report and Recommendation recommending that the Court overrule the statement of errors filed by Plaintiff Pamela Sue Lunsford and enter judgment in favor of the Defendant Commissioner of Social Security. The Plaintiff has filed a timely objection to that recommendation. The Commissioner has not responded. For the following reasons, the Plaintiff's objection will be overruled and this case will be dismissed.

I.

    If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

    The Court's review of the underlying decision "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made

pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind might accept the evidence as adequate to support a conclusion [and] ... presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009), (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II.

The Plaintiff does not object to the Report and Recommendation's summary of the testimony at the administrative hearing, of the medical evidence, or of the administrative decision, so that summary will be repeated here only briefly. Plaintiff claimed a disability beginning on December 28, 2006. She was 48 years old at the time of the hearing, had graduated from high school and attended college, and had previously worked as a department store clerk, at a candle factory, and as a data entry

operator. She testified to a head injury, a back injury, pain in her foot and hip, and depression and anxiety.

There was no treating source medical opinion in this case. However, Plaintiff underwent a number of consultative evaluations, and there were two "paper reviews" done by state agency reviewers.

Dr. Weaver, a consultative examiner, thought that due to depression and anxiety, Plaintiff should not work in environments that required extensive social interaction or interpersonal communication. Dr. Roach, also a consultative examiner, found that Plaintiff suffered from borderline personality disorder, had a GAF of 60, and was markedly impaired in her ability to deal with work stress. Dr. Wilcox, who saw Plaintiff at the request of Muskingum County Job and Family Services, diagnosed depression and anxiety, and expressed the opinion that Plaintiff had only a mild to moderate impairment in the ability to withstand the stress and pressure of everyday work activities. The last mental health professional to do an in-person evaluation, Dr. Yee, concluded that Plaintiff suffered from post-traumatic stress disorder ("PTSD") and thought that she would benefit from seeing a psychiatrist. Like Dr. Roach, he found that Plaintiff had a marked impairment in the area of withstanding work stress, but also thought that once her mood was stabilized she would be a good candidate for vocational retraining.

Dr. Terry, a state agency reviewer, also weighed in on Plaintiff's psychological condition. Dr. Terry (who did not have the benefit of Dr. Yee's evaluation) provided a diagnosis of an affective disorder, an anxiety disorder, and a personality disorder. Dr. Terry did find one marked impairment, in the ability to deal with the general public, and

a number of other moderate or less-than-moderate impairments, including in the area of completing a work day or work week without interruption from psychologically-based symptoms. Dr. Demuth, another state agency reviewer, agreed with Dr. Terry's conclusions.

The ALJ essentially adopted Dr. Terry's and Dr. Demuth's findings. Relying on the testimony of a vocational expert to the effect that someone with these symptoms (which limited Plaintiff to performing medium work, carrying out tasks that were no more than mildly complex, working in a static work setting that was solitary in nature, not having to meet production quotas or perform fast-paced work, and interacting only superficially or infrequently with co-workers or supervisors) could work as a cleaner, laundry worker, or packer, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

### III.

Plaintiff raises two specific issues in her objections to the Report and Recommendation. She contends, first, that it was error for the ALJ to have accepted opinions from sources who never examined her in person over those who did — particularly Dr. Roach and Dr. Yee, both of whom perceived that she had a marked inability to withstand ordinary job stress. Second, she argues that to the extent that the Report and Recommendation found support for the ALJ's decision in Dr. Wilcox's opinion, that was error, because the ALJ did not use that opinion as a basis for choosing to credit Dr. Terry's and Dr. Demuth's conclusions over those of Drs. Roach and Yee. Were the Court to consider that argument, Plaintiff asserts, it would be attributing a reasoning process to the ALJ which is not evident in the record, and that

would violate fundamental precepts of administrative law that the Court cannot make *post hoc* determinations about what an ALJ might have done but can only review what the ALJ actually decided. For the following reasons, the Court finds no merit in either of these arguments.

### IV.

As primary authority for her first objection, Plaintiff cites to the Court of Appeals' recent decision in *Dragon v. Comm'r of Soc. Sec.*, 2012 WL 987758 (6th Cir. March 26, 2012). That case involved the issue of whether the Commissioner correctly determined that the claimant did not meet the requirements of Section 12.05(C) of the Listing of Impairments. In holding that the Commissioner improperly disregarded evidence that the claimant suffered from mental retardation, the court noted that "generally, a treating source is to be given more weight than an examining source and an examining source ... more weight than a non-examining source ...." *Id.* at *8. While the court also stated that this was only a general proposition and not a "bright-line rule," it reversed the Commissioner's decision, which had relied on the opinion of a non-examining source, because the non-examining source's opinion was perfunctory and not well-supported, whereas the examining source's "analysis ... was quite detailed and supported not only by his own evaluation, but by the rest of the record." *Id.* at *9. Plaintiff contends that the same error was made here because Dr. Terry's evaluation reflected a selective review of the record, whereas Dr. Roach's evaluation was consistent with the rest of the record, including the similar opinions expressed by Dr. Yee. Plaintiff adds that because Dr. Yee's opinion post-dated that of Drs. Terry and Demuth, the ALJ had a particular obligation (which, Plaintiff asserts, he failed to meet) to explain why little weight was

being given to Dr. Yee's views.

The Court concludes that this case is distinguishable from *Dragon* and that the ALJ here did not commit the type of error which led the *Dragon* court to reverse the ALJ's decision denying benefits. Here, the issue was not whether there was significant and weighty evidence supporting a finding of mental retardation, as there was in *Dragon*, but whether plaintiff was so impaired in one particular area — withstanding the stress of work — that she could not be gainfully employed. Certainly, the examining sources took her self-report of symptoms into account in making that determination, but the ALJ found that she was less than credible about the impact of her psychological conditions on her ability to work, noting that she had told the Disability Field Office that she was not really disabled but had not been able to find a job and quit working because her boyfriend was supporting her. (Tr. 18). That was articulated specifically as a reason for discounting the opinions of Drs. Roach and Yee. *Id*. The ALJ also noted that those sources' own reports did not reveal the type of difficulties which would support a finding that Plaintiff could not deal with work stress. *Id*. Contrary to Plaintiff's argument, these are exactly the type of reasons which allow an ALJ to assign more weight to the opinions of non-examining sources, and they also reflect consideration of Dr. Yee's report and its rationale, as opposed merely to rejecting that report because it conflicted with the opinions of Drs. Terry and Demuth. Finally, although the ALJ did not specifically cite to Dr. Wilcox's evaluation, one of the factors which the Court must consider is whether the opinions of the examining sources are, in the words of the *Dragon* court, "supported ... by the rest of the record." In *Dragon*, other than the non-examining source's opinions, there was no other evidence to support the finding that

plaintiff did not meet the requirements of Listing 12.05(C).  Here, by contrast, there is other evidence which contradicts the opinions of Drs. Roach and Yee.  For all of these reasons, the Court overrules Plaintiff's first objection to the Report and Recommendation.

The Court's rejection of Plaintiff's first objection leads logically into its discussion of her second.  Citing to cases such as *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181 (6th Cir. August 27, 2009) and *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), Plaintiff argues that it was improper for the Report and Recommendation to rely on, or even discuss extensively, the report of Dr. Wilcox because the ALJ did not do so to any great degree.  However, as noted above, it is proper for the Court to examine all of the evidence of record when deciding if the ALJ erred in rejecting the opinions of various medical sources in order to determine if the rejected evidence is, in fact, consistent with or uncontradicted by other evidence, and Plaintiff has cited no cases suggesting that the Court's review of the record is limited only to those portions of the record cited or discussed in the administrative decision.

To the contrary, in a social security case, the Court's "traditional function [is] to review the entire record so as to determine whether the findings made by the Secretary are supported by substantial evidence." *Mitchell v. Weinberger*, 404 F.Supp. 1213, 1214 (D. Kan. 1975).  There are certain specific circumstances, such as in the application of the "treating physician" rule, where the Court must review the exact rationale articulated by the ALJ, without reference to other evidence which could have been cited in support of the ALJ's decision, in order to determine if the ALJ acted in accordance with law, but that is typically required only where the Commissioner's own

regulations mandate that the ALJ recite, and not just consider, the evidence supporting or detracting from the decision. That is why, in cases such as *Wilson* and *Simpson*, cited by Plaintiff, a remand was necessary in spite of the existence of evidence which could properly have led the ALJ to reach the same result. In *Wilson*, the court found that the ALJ violated a procedural rule which was both mandatory and necessary in order to permit a reviewing court to understand the ALJ's reasoning process, and for the claimant to understand why the opinion of his or her treating doctor had not been accepted. In *Simpson*, the court rejected an invitation to make findings of fact as to the ability of the claimant to perform a substantial number of jobs, noting that such a decision was committed by law to the agency and not the court, so that "the ALJ must make this determination." *Simpson*, 344 Fed. Appx. at *10. Here, by contrast, the Report and Recommendation neither overlooked a violation of a procedural rule nor made a finding committed in the first instance to the ALJ by noting the consistency between Dr. Wilcox's report and the ALJ's finding that plaintiff was not as limited as Dr. Roach or Dr. Yee believed. Rather, that comment was made in the context of a review of the entire record — something that is mandatory given the Court's obligation to determine if the ALJ "has made findings of fact unsupported by substantial evidence in the record." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Consequently, neither of Plaintiff's objections persuade the Court that the Report and Recommendation erroneously determined the issues in this case in the Commissioner's favor.

## V.

For all of these reasons, and after a *de novo* review of those portions of the

Report and Recommendation to which the Plaintiff objected, the Court **OVERRULES** the objections (#22) and **ADOPTS AND AFFIRMS** the Report and Recommendation (#21). The plaintiff's statement of specific errors (#15) is **OVERRULED**. The Clerk is directed to enter judgment in favor of the Commissioner. This case is **DISMISSED.**

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**